IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GLORIA AVILA, et al.

     Plaintiffs,                    No. 2:08-cv-02488 JAM KJN

     vs.

OLIVERA EGG RANCH, LLC

     Defendant.               <u>ORDER</u>

                                    /

        Presently before this court is plaintiffs' "Motion for Attorneys' Fees and Costs." This motion follows an order awarding sanctions issued by District Judge John A. Mendez, which provided in pertinent part:

> Defendant shall reimburse Plaintiffs for their costs and fees incurred (1) in bringing the Motion for Sanctions (Docket ## 32-39); (2) during the meet and confer with defense counsel related to Defendant's actions; and (3) in bringing the instant Request for Reconsideration of Magistrate Judge's Ruling. In addition, Defendant shall reimburse Plaintiffs for their costs expended in the investigation of Defendant's activities including the hiring of an expert witness in ammonia emissions. Within ten days of the entry of this order, Plaintiffs shall submit with accompanying declaration a statement of the pertinent fees and costs.

(Dkt. No. 80.)

////

1  Plaintiffs timely submitted a memorandum of points and authorities in support of
2 their application for fees and costs, along with the required declarations.  Plaintiffs seek recovery
3 of attorneys' fees and costs in the amount of $169,215.00.[1]  (Dkt. Nos. 81, 93.)  Defendant
4 opposed the motion "to the extent that the requested fees are unreasonable, excessive, and/or not
5 in accordance with the Court's Order."  (Dkt. No. 91 at 3.)  Oral argument was held on this
6 matter on April 1, 2010, before the undersigned.

7  As both parties recognize, courts within the Ninth Circuit determine an attorneys'
8 fees award by calculation of the "lodestar."  Caudle v. Bristow Optical Co., Inc., 224 F.3d 1014,
9 1028 (9th Cir. 2000); Gates v. Deukmejian, 987 F.2d 1392 (9th Cir. 1992); Hensley v. Eckerhart,
10 461 U.S. 424, 433 (1983).  The lodestar is calculated by multiplying the number of hours the
11 prevailing party reasonably spent on the litigation by a reasonable hourly rate.  Id.  "Where the
12 documentation of hours is inadequate, the district court may reduce the award accordingly."
13 Hensley, 461 U.S. at 433.  The court should also exclude from this initial fee calculation hours
14 that were not "reasonably expended," such as where cases are overstaffed or a lawyer's skill in a
15 particular area is lacking.  Id.  The prevailing party has the burden of tendering evidence of the
16 hours spent on the relevant litigation.  Id.; Gates, 987 F.2d at 1397.  The party opposing the fee
17 request can rebut this with evidence that the time charged is inaccurate or unreasonable.  Gates,
18 987 F.2d at 1397-98 ("The party opposing the fee application has a burden of rebuttal that
19 requires submission of *evidence* to the district court challenging the accuracy and reasonableness
20 of the hours charged or the facts asserted by the prevailing party in its submitted affidavits.")
21 (emphasis added.)

22  Defendant does not challenge the reasonableness of plaintiffs' counsel's hourly

---

[1] Plaintiffs originally sought $174,270.00 in fees and $1,219.76 in costs, for a total of $175,489.76.  However, as discussed below, after reviewing the defendant's opposition, plaintiffs conceded that $5,055.00 of the requested fees were not compensable under Judge Mendez's Order.  (Dkt. No. 93 at 2.)  Defendant does not challenge the amount of costs sought by plaintiffs.

2

rate.[2] In fact, except as noted in footnote 2, it would appear difficult for defendant to do so. Plaintiffs' counsel appropriately used Orrick, Herrington & Sutcliffe LLP's ("Orrick") billing rates in the Sacramento office as a beginning hourly rate figure, rather than their San Francisco or Washington, D.C. locations' hourly rates, where some of the attorneys handling the matter were located. See Gates, 987 F.2d at 1405 (recognizing that the prevailing party should be awarded a reasonable hourly rate given the relevant legal community, which is generally that in which the forum district is located). Plaintiffs then assert they further reduced those Orrick Sacramento hourly rates. (Dkt. No. 82 at 6.) This resulted in reductions of, in some cases, hundreds of dollars an hour for each hour billed.[3] This hourly rate reduction diminished the amount of attorneys' fees plaintiffs are seeking by approximately $110,000.[4] Id.

Defendant, however, challenges the reasonableness of the hours spent on the matters for which plaintiffs seek fees. Judge Mendez's order awarded *costs and fees* incurred in three specific categories: "(1) in bringing the Motion for Sanctions (Docket ## 32-39); (2) during the meet and confer with defense counsel related to Defendant's actions; and (3) in bringing the instant Request for Reconsideration of Magistrate Judge's Ruling, and *costs* incurred in the investigation of defendant's activities." (Dkt. No. 80, emphasis added) (hereinafter the enumerated categories are referred to as the "relevant litigation").

---

[2] The court notes that counsel for plaintiff the Humane Society concedes that they have no hourly rate and instead simply adopt the hourly rate used by comparable Orrick attorneys. (Dkt. No. 83 at ¶¶ 15, 19). Moreover, given the fact that counsel for the Humane Society do not ordinarily "charge by the hour for work performed by its attorneys" (id.), a question could arise whether the time spent by the attorneys for the Humane Society on this matter constitutes "costs and fees incurred" consistent with Judge Mendez's order. Defendant, however, has not raised those issues, and does not contest the requested attorneys' fees on that basis.

[3] For instance, attorney Angela Padilla's standard billing rate would have been $715 per hour, but plaintiffs reduced it to $400 per hour. Attorney Joshua Watts' hourly rate would have been $470 for the Orrick Sacramento office, but plaintiffs reduced it to $300 per hour. (Dkt. No. 82-2 at 1.)

[4] Plaintiffs also excluded from their fee application time expended by summer associates and paralegals. (Dkt. No. 82 at 3.)

1    Defendant first requests a reduction of $10,310 in fees related to the investigation
2 of defendant's activities because Judge Mendez's order provided only that investigation *costs*
3 were awardable. Despite this limiting language, plaintiffs' fee request states that the claimed
4 hours include those spent, inter alia, conducting an investigation and interviewing third parties
5 about what was witnessed. (Dkt. Nos. 82 at 3, 83 at 1.) In the Brandt declaration, attorney
6 Brandt states that Humane Society attorneys have spent a total of 229.8 hours in the three
7 enumerated categories *and* the investigation of the defendants' activities including the hiring of
8 an expert witness in ammonia emissions. (Brandt Decl. ¶ 5, Dkt. No. 84 at 2.) Judge Mendez,
9 however, only awarded *costs* in the investigation category.

10    After reviewing the submitted time entries and Judge Mendez's ruling, this court
11 agrees with defendant that fees related to investigation of defendant's activities may not be
12 awarded. Despite plaintiffs' contentions that such a reading of Judge Mendez's ruling is unduly
13 restrictive (e.g., that attorneys were the only persons at hand to conduct the investigation on such
14 short notice and that evidence gathering is a necessary component to bringing the motion for
15 sanctions), this court finds that Judge Mendez's ruling was precisely crafted to exclude an award
16 of fees related to investigation. Cf. Singh v. Holder, 591 F.3d 1190, 1195 (9th Cir. 2010)
17 (recognizing that under the doctrine of *expressio unis est exclusio alterius*, where Congress
18 includes particular language in one section of the statute but omits it in another section of the
19 same statute, Congress acts intentionally and purposely in the disparate exclusion). Any other
20 interpretation ignores the plain language of Judge Mendez's order. Accordingly, the court
21 concludes that the following requested billing entries shall be excluded from the award:[5]

---

[5] The majority of these entries are included in the chart attached as Exhibit 4 to the Mueller declaration. The court has not excluded from the fee award $1,809.00 in charges because it appears, despite defendant's argument to the contrary, that they are fees incurred in bringing the motion for sanctions: Brandt, Peter, 07/15/09, $150; Brandt, Peter, 07/16/09, $225; Brandt, Peter, 08/24/09, $99; Brandt, Peter, 08/25/09, $69; Culpepper, J., 08/25/09, $1200; Brandt, Peter, 08/27/09, $66. In particular, those entries reveal that the individuals were engaged in conduct related to preparing Dr. David Parker's declarations filed in support of the plaintiffs'

| Timekeeper | Date | Charge | Task |
|---|---|---|---|
| Roth, Nicole | 06/04/09 | $180 | Listen to phone message from Ms. Magaoay regarding cleanup at Olivera's farm; e-mail from team regarding clean-up and possible destruction of evidence. |
| Brandt, Peter | 06/04/09 | $1425 | Destroying evidence caselaw research; drive to Briggs Rd., Lathrop, with M. Alexander, stopping to purchase camera and air masks etc.; arrive at end of Briggs Rd., Lathrop, investigate lagoon dredging as described in M. Alexander declaration. |
| Watts, Joshua | 06/04/09 | $90 | Correspond with team members related to emergency clean-up at defendant's property. |
| Brandt, Peter | 06/08/09 | $300 | Drive to Briggs Rd., Lathrop, to meet K. Nass; arrive at G. Avila address, meet K. Nass, G. Avila, K. Nass and investigate lagoon dredging as described in K. Nass declaration. |
| Padilla, Angela | 06/08/09 | $400 | Work on spoilation of evidence investigation and legal analysis. |
| Culpepper, J. | 06/10/09 | $600 | Updating files; reading documents and past communications re: Operation. |
| Culpepper, J. | 06/16/09 | $150 | Telephone calls with plaintiffs and expert discussing Operation; conference call with co-counsel on scheduling. |
| Link, Hilarie | 06/16/09 | $100 | Conference call re Olivera's destruction of evidence. |
| Roth, Nicole | 06/16/09 | $1140 | Phone call with Ms. Yepez; multiple emails with team regarding destruction of evidence; call Ms. Yepez and Ms. Magaoay; prepare to visit farm and collect evidence. |

underlying sanctions motion.

| Roth, Nicole | 06/17/09 | $990 | Discuss case and research assignment with A. Mangus; multiple emails with team regarding destruction of evidence. |
|---|---|---|---|
| Watts, Joshua | 06/17/09 | $450 | Correspond with team members regarding investigation; meet and confer with N. Roth and A. Mangus regarding case background and research assignment; draft emails to A. Mangus regarding same. |
| Brandt, Peter | 06/22/09 | $330 | Drive to Lita G. Address, Briggs Rd., Lathrop. |
| Brandt, Peter | 06/22/09 | $225 | Interview Lita G. regarding dredging. |
| Brandt, Peter | 06/22/09 | $75 | Discuss dredging with Gloria A. |
| Brandt, Peter | 06/23/09 | $300 | Drive to M. Avila address, Briggs Rd., Lathrop. |
| Brandt, Peter | 06/23/09 | $375 | Drive home. |
| Brandt, Peter | 06/24/09 | $150 | Review M. Avila background docs. |
| Brandt, Peter | 06/24/09 | $300 | Call with J. Culpepper, S. Conant re Olivera rule 34 timing, and destruction of evidence. |
| Brandt, Peter | 06/26/09 | $75 | Review J. Culpepper's questions for Dr. David Parker re topics addressed in declaration of Dr. Parker. |
| Brandt, Peter | 06/29/09 | $75 | Avila background research. |
| Roth, Nicole | 06/30/09 | $150 | Conference call with HSUS regarding destruction of evidence. |
| Culpepper, J. | 07/01/09 | $300 | Creating disk of Operation documents for expert; telephone call with K. Nass re: declaration. |
| Culpepper, J. | 07/08/09 | $150 | Telephone call with expert re: operation. |
| Brandt, Peter | 08/03/09 | $51 | Coordinate reaching out to 3d party trucking companies who participated in dredging. |

Plaintiffs contend that at least a portion of these charges may be awardable, because the charged amount may include time spent on undisputably compensable activities,

6

such as caselaw research and legal analysis. (Dkt. No. 93 at 10 and 10 n.3.) However, because plaintiffs' counsel's time entries are not specific enough or are not broken down so that the court can determine how much time was spent on each task, so-called "task billing," the court is unable to conclude whether 5% of the time of a charge was related to an uncovered activity, or whether 95% of the charge was related to an uncovered activity. Therefore, because the plaintiffs have not met their burden of establishing that the tendered hours were reasonably spent on the "relevant litigation," the requested fee award will be reduced by $8,381.00.

Defendant next contends that the court should exclude any attorneys' fees billed for matters that are unrelated to the "relevant litigation."[6] Plaintiffs do not necessarily disagree. In fact, in response to defendant's motion seeking to exclude such "unrelated" fees, plaintiffs conceded that $5,055.00 in time entries should have been excluded from their initial lodestar calculation. (Dkt. No. 93 at 10 n.12.) Plaintiffs argue in summary fashion that the remainder of the entries contested in Exhibit 5 are "all related to the compensable activities enumerated in the Court's Order and are fees to which Plaintiffs are entitled." (Dkt. No. 93 at 9.)

Upon a detailed review of the remaining challenged entries contained in Exhibit 5, the undersigned finds that plaintiffs have not established that the following entries are related to the reimbursable categories set forth by Judge Mendez. This case involves substantial litigation other than the "relevant litigation" categories identified in Judge Mendez's order. Therefore, without greater specificity, plaintiffs have not met their burden to establish that entries such as "supervise team" relate solely to the "relevant litigation." Accordingly, the following entries will be excluded from the awardable fees:

| Timekeeper | Date | Charge | Task |
|---|---|---|---|
| Padilla, Angela | 06/09/09 | $200 | Supervise team. |

---

[6] Defendant has set forth the contested entries in Exhibit 5 to the Mueller Declaration. (Dkt. No. 91-2 at 34.)

7

| Padilla, Angela | 06/10/09 | $200 | Supervise team. |
| --- | --- | --- | --- |
| Brandt, Peter | 06/14/09 | $150 | Purchase new memory card to replace card M. Alexander used during 5-Jun-09 site investigation. |
| Brandt, Peter | 06/16/09 | $75 | Duplicate 8-Jun-09 videos and prepare to mail to Orrick. |
| Padilla, Angela | 06/16/09 | $400 | Team emails; direct work on case. |
| Brandt, Peter | 06/17/09 | $225 | Site investigation and video duplication. |
| Brandt, Peter | 06/24/09 | $90 | Set up FTP site for Olivera dredging evidence. |
| Padilla, Angela | 06/24/09 | $200 | Supervise case. |
| Brandt, Peter | 07/15/09 | $150 | Upload photos and videos of dredging operation (attachments to declarations of M. Alexander, K. Nass). |
| Brandt, Peter | 08/08/09 | $201 | Draft up caselaw research email, edit. |
| Watts, Joshua | 09/04/09 | $150 | Correspond with team members related to defendant's discovery violations. |
| Padilla, Angela | 09/09/09 | $200 | Conduct team meeting. |
| Brandt, Peter | 09/15/09 | $66 | Olivera call. |
| Roth, Nicole | 09/16/09 | $90 | Review correspondence from team. |
| Link, Hilarie | 10/07/09 | $840 | Review correspondence regarding testing, draft letter. |

Because it is not apparent that the above referenced time entries are due solely to the "relevant litigation," the requested fee award will be reduced by an additional $3,237.00.

This court finds that the remainder of the entries in Exhibit 5, separate from those that were previously voluntarily excluded by plaintiffs, relate to the compensable categories contained in Judge Mendez's order. For instance, defendant challenges attorney Peter Brandt's time on 6/29/09 wherein he "assemble[d] video and pdf of exhibits for M. Alexander declaration." Defendant argues that this time is for a non-attorney task that is entirely unrelated to Judge Mendez's order's three reimbursable categories. The court disagrees. Preparation of exhibits to a witness's declaration in support of a complex motion for sanctions is often an

analytical task, and one that falls within the compensable categories contained in Judge Mendez's order.

Defendant next contends that plaintiffs' attorneys' fees as a whole are unreasonable and excessive. Defendant complains of the hours spent, the backgrounds of the plaintiffs' attorneys, and the number of attorneys staffed on the case. Yet, defendant provides this court with no support, evidentiary or legal, in furtherance of its broad request to reduce the potentially reimbursable fees "across-the-board by a minimum of 4/6 (67%) or $102,611.17." (Dkt. No. 91 at 7.)

As defendant acknowledges in its written opposition, a party opposing an attorneys' fees motion can rebut the evidence of a plaintiff's hours spent on the matter with "evidence that the time charged is inaccurate or unreasonable." (Def.'s Opp'n, Dkt. No. 91 at 3-4) (citing L.H. v. Schwarzenegger, 645 F. Supp. 2d 888, 896 (E.D. Cal. 2009), Gates v. Deukmejian, 987 F.2d 1392 (9th Cir. 1992)). But defendant has provided no such evidence. Instead, defendant's counsel opines that (1) too many lawyers are staffed on this case, (2) the lawyers staffed on the case talk to each other too much about the case, and (3) the plaintiffs' team of attorneys should not need to review their colleagues' work to the extent exhibited in the fee application. Although the undersigned does not necessarily disagree with all of defendant's opinions, the problem here, as discussed below, is a lack of evidentiary support for defendant's arguments.

Defendant's counsel has not provided evidence sufficient to challenge the reasonableness of the staffing on this motion for sanctions and related motion for reconsideration. At oral argument, the court invited defendant's counsel to suggest a method by which further analysis of the disputed time entries might be conducted, even inquiring into whether further submissions to the court would be of material assistance. Defendant's counsel's proposal was that plaintiffs' counsel could again review their time entries and attempt to break out the time spent on each discrete task. This plan is unworkable. Over eight months have

1  passed since the time entries at issue and it would be impractical to perform such a belated
2  analysis.

3         Defendant specifically argues that plaintiffs' counsel's timekeeping is inadequate
4  because "individual tasks are bundled with all others completed on a particular day, rather than
5  tracking the actual time spent on each individual task," rendering it impossible to definitively
6  parse out those tasks which qualify for reimbursement under Judge Mendez's order's enumerated
7  categories. Defendant cites to, and this court is aware of, no authority which mandates per task
8  billing as a condition precedent to a party's recovery of attorneys' fees.

9         In support of its task-billing argument, defendant cites only to Hensley, 461 U.S.
10  424 (1983), in support of the general proposition that attorneys' fees may be reduced where a
11  party's timekeeping is inadequate. The court in Hensley stated only that "[t]he party seeking an
12  award of fees should submit evidence supporting the hours worked and rates claimed. Where the
13  documentation of hours is inadequate, the district court may reduce the award accordingly."
14  Hensley, 461 U.S. at 433. This, the court has done, as previously noted in this order. The
15  Hensley case does not stand for the broader proposition, however, that a daily summary of all
16  time spent on a particular matter is, by itself, inadequate to support an attorneys' fees award. At
17  oral argument, plaintiffs' counsel represented to the court that the Orrick firm bills the vast
18  majority of its clients in the same fashion as time entries in the instant dispute, one lump-sum
19  entry per day, which counsel referred to as "block billing."

20         As discussed below, the undersigned shares defendant's frustration that the "block
21  billing" prevents the court from performing a greater analysis of whether time spent on particular
22  tasks was redundant or excessive. Nevertheless, the plaintiffs have met their burden, and without
23  greater evidentiary support the undersigned does not have a particular basis to reduce the fees to
24  a greater extent than is already being done herein.

25         Defendant's counsel submitted Exhibit 6 to the Mueller declaration, which
26  purports to represent "Tasks Related to Communication With Each Other." (Dkt. No. 91-2 at

38.) The court's independent review of the time entries in Exhibit 6 suggests that defendant's representations are not entirely accurate. As previously noted, without the use of "task billing," it is impossible to calculate the percentage of each time entry spent on a particular sub-task. For instance, attorney Nicole Roth billed 5.1 hours on 07/16/09 for tasks which included: "[r]esearch and draft motion for sanctions; call with Mr. Parker; call with [co-counsel and attorney] Brandt." Defendant's inclusion of the entirety of Ms. Roth's 5.1 hour billing for this client in the alleged "246.94 hours" on matters which "included communicating with each other" leads to an inherently inflated figure of the time plaintiffs' counsel spent in communications with one another. The court cannot, on the instant record, second guess plaintiffs' counsel's chosen staffing or time spent on this matter.

Defendants also attach Exhibit 7 to the Mueller declaration, which purports to demonstrate that plaintiffs' counsel spent 184.14 hours in "[t]asks related to reviewing each other's work." (Dkt. No. 91-2 at 48.) As with Exhibit 6, the inclusion of all hours billed on a particular day regardless of task leads to an inflated sum because it is unknown how much of each day's billing related, for example, to "reviewing" the motion for sanctions or drafting the motion for sanctions, when the time entry states only "review and draft motion for sanctions."

Moreover, defendant has not established that this figure is unreasonable in light of the expansive nature of the underlying motion for sanctions. Plaintiffs' memorandum of points and authorities in support of their motion for sanctions was twenty-four pages in length, contained a plethora of legal authority and was bolstered by numerous supporting documents and exhibits. Even if, assuming arguendo, plaintiffs' counsel's communications amongst their litigation team and review of one another's work edged toward the outer reaches of reasonable litigation conduct, an issue which this court does not decide,[7] defendants have provided only

---

[7] Courts have recognized the increasingly prevalent practice of multiple-lawyer litigation where litigation staffing consists of a team of attorneys. See, e.g., Johnson v. Univ. of Ala., 706 F.2d 1205, 1208 (11th Cir. 1983).

conclusory assertions that such communications were "excessive," an argument that is insufficient to oppose plaintiffs' fee request. "[D]efendants have not tendered any evidence that the amount of hours billed are objectively unreasonable for a case such as this." L.H., 645 F. Supp. 2d at 898.

Despite the foregoing, the undersigned has serious concerns about the fact that at least five licensed attorneys appear to have reviewed and revised what is in essence still a single sanctions motion over a discovery dispute, albeit one with major implications for the case going forward.[8] Moreover, this action is staffed with eight licensed attorneys, six of whom are associated with Orrick firm and two of whom are associated with the Humane Society of the United States. No explanation appears from the written record as to why this action is staffed with this volume of attorneys. At oral argument, plaintiffs' counsel stated that this action was staffed with this number of attorneys because the pool of available attorneys all had calendars which were too impacted to handle this pro bono matter on a full-time basis. Hence, plaintiffs' counsel stated that although more attorneys are staffed on this matter than might otherwise be the case, each attorney assigned to this case is billing less time because there are numerous other colleagues with whom to share the workload. Although the undersigned recognizes the importance of pro bono representation, there are inefficiencies in this method of staffing and defendant should not be penalized for the inherent duplication of efforts.[9]

This environmental litigation is proceeding against a single defendant, and any extraordinary complexity necessitating the affiliation of eight attorneys in a single action is not readily apparent. Therefore, because of all of the concerns expressed herein, as well as the sheer amount of the fee request for a single motion and request for reconsideration, and after reviewing

---

[8] See Dkt. Nos. 83 and 84 (stating that timekeepers Peter Brandt, Hilarie Link, Joshua Watts, Angela Padilla and Jessica Culpepper all reviewed the motion for sanctions).

[9] The undersigned also queries whether a law firm may give lesser scrutiny to the amount of time billed on a pro bono matter where no client is being billed for all of the time spent and the case may be a good learning ground for less experienced attorneys.

all of the time entries in detail and the underlying discovery dispute, this court will exercise its discretion to impose a ten percent reduction in the remainder of the fees requested by plaintiffs. In re Smith, 586 F.3d 1169 (9th Cir. 2009) ("[t]he district court can impose a small reduction, no greater than 10-percent–a 'haircut'–based on its exercise of discretion") (citing Moreno v. City of Sacramento, 534 F.3d 1106, 1112 (9th Cir. 2008)).

For the foregoing reasons, it is HEREBY ORDERED that:

Plaintiffs' motion for attorneys' fees and costs is GRANTED in the amount of $143,057.

**IT IS SO ORDERED**

DATED:  April 5, 2010

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE